No. 18,276.

First National Bank of Fort Collins, Substituted for
Emma Honstein *v*. Clyde E. Honstein.
(355 P. [2d] 535)

Decided September 26, 1960.

Messrs. March & Wells, for plaintiff in error.

Mr. Alden T. Hill, Mr. Ralph H. Coyte, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE KNAUSS.

THE parties to this writ of error are here in the same order they appeared in the trial court. The action was instituted by Emma Honstein, hereafter referred to as Emma, or the mother, against her son, Clyde E. Honstein, to whom we will refer as Clyde. It is alleged that certain real estate in Fort Collins, Colorado, was held in trust for her by Clyde, which he refused to deliver or convey to her. Issue being joined, trial was had to the court resulting adversely to Emma, and from the judgment entered she sought review by writ of error. After the opening brief was filed in this court, Emma was adjudged a mental incompetent and the First National Bank of Fort Collins appointed conservator of her estate and substituted as plaintiff in error here.

From the record it appears that in 1945 Clyde was the owner of certain lots in Fort Collins adjacent to his residence. Clyde's father and mother, Emma, were then living in Nebraska. The father had suffered a mild stroke and the Nebraska real estate of the couple was sold. The parents then requested Clyde, a physician, to build a home in Fort Collins where they could live and have the benefit of his care and attention, both being well advanced in years.

The mother and father came to Fort Collins where Clyde rented an apartment for them, and for some fourteen months paid the rent thereon and looked after his parents' welfare. In November 1945 he commenced the construction of a house, which included a basement apartment, on a portion of the land he owned. During the time the house was being constructed Emma and the father gave Clyde four checks aggregating $10,000 which Clyde applied to the cost of the structure. Total cost of the building amounted to more than thirteen thousand dollars.

Upon completion of the house the mother and father occupied it and following the death of the father in 1951,

Emma continued in residence until May 1955. By deposition Emma testified that the house was built on Clyde's lot "so nobody could take it away from him because we felt he had done a lot of work for his Dad, he earned it." Clyde testified that the house was built to provide a home for his parents as long as they lived. During the time Emma and the father occupied the house, Clyde rented the basement apartment and collected the rents therefor; he paid all the taxes, special assessments, insurance and utilities, and for all repairs in connection with the property.

In May 1955 Clyde, with the consent of two other children of the couple, placed Emma in a rest home in Fort Collins. This action was started in 1956, and shortly thereafter, by the consent of all parties the property was sold and the sum of $10,000 deposited in the registry of the court, to abide a final determination of the controversy.

Upon trial the court found and concluded that the $10,000 contributed by the parents was "a completed and consummated gift to Clyde" and that in equity, Emma being unable to occupy the residence, "should receive the income from the amount thus given to Clyde during her lifetime." No cross error is assigned to this part of the judgment.

■ Transfers of property between parents and children are presumed to be gifts until the contrary is clearly and unequivocally shown. *Howard v. Barrett,* 101 Colo. 249, 72 P. (2d) 474; *Champion v. Champion,* 110 Colo. 153, 132 P. (2d) 185; *Fister v. Fister,* 122 Colo. 432, 222 P. (2d) 620.

■ Where the owner of property transfers it without declaring a trust, the transferee does not hold it upon a resulting trust, even though the transfer is gratuitous. *Champion v. Champion,* supra. In the present case Clyde, for the purpose of having his aging parents near, where they could receive his care and attention, in addition to providing them with a home during their

declining days, did what any dutiful son would do. He arranged, at his own expense, for a Mr. Porter to occupy the basement apartment in the house, and furnished his board, in order that someone would be present to assist the parents. It cannot be said from this record that Clyde breached any arrangement with his parents. On the contrary he recognized and fulfilled his obligation toward them as a son in the performance of a filial duty. When the mother's condition became such that no one could be secured to care for her in the home, she had to be hospitalized and Clyde arranged for her proper care. Both parents are now deceased.

Plaintiff failed to sustain the burden of proving a resulting trust, either by declaration or by evidence, that the funds of the parents were given or received with the intent or purpose of establishing a trust.

The trial court found that there was a valid gift inter vivos. This finding is amply supported by the evidence, hence the judgment is affirmed.

Mr. Justice Moore and Mr. Justice Day concur.